ORIGINAL

ECF

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

OVERLOOK SYSTEMS TECHNOLOGIES, INC.,

*Plaintiff,*

*v.*

THE UNITED STATES OF AMERICA,

*Defendant.*

CASE NO. 06-606 C

JUDGE ____________

## OVERLOOK'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ITS MOTION FOR PRELIMINARY INJUNCTION

RONALD A. SCHECHTER
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004
Tel: (202) 942-5160
Fax: (202) 942-5999

*Attorney of Record for Overlook Systems Technologies, Inc.*

*Of Counsel:*
Drew A. Harker
Matthew H. Solomson
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
Tel: (202) 942-6308
Fax: (202) 942-5999

DATED: August 28, 2006

Overlook Systems Technologies, Inc. ("Overlook") seeks injunctive relief to avoid allowing the United States, acting through the Department of the Air Force, to ignore the mandatory stay requirements of the Competition in Contracting Act, which this Court has recognized "'were designed to preserve the status quo until the Comptroller General issues his recommendation, in order to ensure that the recommendation would be considered'" and to prevent what would otherwise be "'*faits accomplis*'" in favor of the agency. *PGBA v. United States*, 57 Fed. Cl. 655, 658 n.3 & 660 n.8 (quoting H. Rep. No. 99-138 (1985) and *Lear Siegler, Inc., Energy Prods. Div. v. Lehman*, 842 F.2d 1102, 1105 (9th Cir. 1988)).

On or about August 22, 2006, the Air Force notified Overlook that the Air Force had completed corrective action undertaken in response to Overlook's Government Accountability Office ("GAO") bid protest. In that notice, the Air Force reawarded Contract No. FA2550-06-C-8003 to LinQuest Corporation ("LinQuest").

On August 24, 2006, Overlook timely filed a Supplemental Protest with the GAO. In that Supplemental Protest, Overlook renewed its previous protest grounds, challenged the nature of the Air Force's putative correction action, and requested the "GAO promptly advise the Air Force of this protest to preserve the applicability of the statutory [Competition in Contracting Act] stay." On or about August 24, 2006, Overlook also contacted Air Force counsel to inquire whether the agency intended to abide by the statutory stay of contract performance mandated by the Competition in Contracting Act ("CICA"), 31 U.S.C. § 3553 (the "CICA stay").

On August 25, 2006, Mr. Randall W. Thornton, the contracting officer now supervising this procurement, contacted Overlook's counsel and stated that the Air Force,

acting through 50th Contracting Squadron, Schriever AFB, has no plans to suspend LinQuest's contract performance because the Air Force does not believe Overlook is entitled to the CICA statutory stay.

This is an action by Overlook, pursuant to 28 U.S.C. § 1491(b), objecting to the Air Force's failure to stay LinQuest's performance as arbitrary, capricious, and otherwise contrary to law, and seeking declaratory and permanent injunctive relief preventing the Air Force from allowing LinQuest to continue contract performance until Overlook's GAO Supplemental Protest can be resolved.

Until such time that this Court can issue a ruling on the merits of Overlook's Complaint – or until the GAO can resolve Overlook's Supplemental Protest – Overloook respectfully requests that this Court issue a temporary restraining order (and/or preliminary injunction) precluding the Air Force and LinQuest from performing Contract No. FA2550-06-C-8003, awarded under Request for Proposal No. FA2550-05-R-2000.

## I. STATEMENT OF THE QUESTION

Is Overlook entitled to a temporary restraining order and/or preliminary injunction to require the Air Force to stay LinQuest's performance of Contract No. FA2550-06-C-8003?

## II. STATEMENT OF THE CASE

On March 16, 2006, Overlook filed a timely bid protest with the GAO objecting to the evaluation of proposals under Request for Proposal No. FA2550-05-R-2000 ("RFP") and the decision by the Air Force to award the Global Positioning System Operations Center ("GPSOC") contract to LinQuest Corporation and its subcontractor General Dynamics Advanced Information Systems ("GD"). Overlook's protest argued

that the agency's evaluation of LinQuest's past performance was unreasonable, that the Air Force's best value decision was irrational, and that LinQuest was precluded from performing the GPSOC contract due to an organizational conflict of interest ("OCI"). In particular, Overlook's OCI argument, in part, was that GD, as the GPSOC contractor, would be in a position to evaluate its own equipment or performance provided under other Air Force contracts. After the Air Force filed its agency report, Overlook submitted a supplemental protest based in part on the Air Force's failure to consider adequately the potential OCIs disclosed by GD. After the parties made various additional submissions, the GAO determined, on May 25, 2006, that a hearing was necessary to resolve a factual dispute regarding the function of the GPSOC contractor, and notified the parties accordingly, via e-mail, as follows:

> The issue that has led our Office to conclude that a hearing is needed in this case involves the OCI allegation raised in the initial protest filing[,] i.e., that the awardee here could be in the position to make assessments about whether the GPS receiver in equipment it provided to the government is, or is not, the cause of a GPS failure. Currently, the protester says such an assessment is part of the effort here, while the agency and intervenor say such an assessment is not part of the effort here. To resolve this factual dispute, I think we need to hear from witnesses from both the agency and Overlook. (Emphasis added).

On June 5-6, 2006, the GAO held a hearing, during which the GAO heard testimony from several Air Force witnesses and Mr. Rob Conley, Overlook's Chief Engineer and GPSOC Program Manager.

Post-hearing comments were due on Monday, June 12, 2006. On Friday, June 9, 2006, one business-day before post-hearing comments were due, the Air Force notified GAO and the parties of the Air Force's decision to take corrective action in response to

Overlook's protest. On June 13, 2006, GAO dismissed as "academic" Overlook's protest – without prejudice – in light of the Air Force's decision to take corrective action.

On August 22, 2006, Overlook received the Air Force's notice of Completion of Corrective Action. That notice indicated that the "Air Force received an acceptable OCI mitigation plan for LinQuest Corporation and has determined that award to LinQuest is proper." In addition, the notice claimed that "[t]he Air Force has re-examined the source selection evaluation process and has determined that the evaluation was proper." The Air Force instructed LinQuest to "immediately proceed with contract performance."

On August 24, 2006, Overlook filed a timely Supplemental Protest with the GAO. In that protest, Overlook renewed its previous protest grounds and challenged the nature of the Air Force's putative correction action. Overlook's protest also requested the "GAO promptly advise the Air Force of this protest to preserve the applicability of the statutory [CICA] stay." Overlook immediately contacted Air Force counsel to confirm that the agency intended to abide by the statutory stay of contract performance as required by 31 U.S.C. § 3553.

On August 25, 2006, Mr. Randall W. Thornton – the contracting officer now supervising the procurement at issue on behalf of the Air Force's 50th Contracting Squadron – contacted undersigned counsel and indicated that the Air Force has no plans to suspend LinQuest's contract performance because the Air Force does not believe Overlook is entitled to the statutory stay provided for by CICA, 31 U.S.C. § 3553. The Air Force apparently has not taken the steps that allow an agency to override the statutory stay in extraordinary circumstances. 31 U.S.C. § 3553(d)(3)(C).

## III. ARGUMENT

When considering an application for a temporary restraining order or a motion for preliminary injunctive relief, the court must weigh four factors: "'(1) immediate and irreparable injury to the movant; (2) the movant's likelihood of success on the merits; (3) the public interest; and (4) the balance of hardship on all the parties.'" *Aeroplate Corp. v. United States*, 67 Fed. Cl. 1, 2 (2005) (quoting *U.S. Ass'n of Importers of Textiles & Apparel v. United States*, 413 F.3d 1344, 1347-48 (Fed. Cir. 2005)). No single factor is determinative, and "the weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993). Applying these factors to the circumstances of this case, it is clear that Overlook is entitled to injunctive relief.

### A. Overlook Will Prevail on the Merits of its Complaint[1]

The Competition in Contracting Act ("CICA"), 31 U.S.C. § 3553(d)(3), "provides that if the agency receives [timely] notice of a bid protest in the GAO, 'the contracting officer may not authorize performance of the contract to begin while the protest is pending.'" *University Research Co., LLC v. United States*, 65 Fed. Cl. 500, 502 n.3 (2005) (quoting 31 U.S.C. § 3553(d)(3)(A)(i)); *see also* 31 U.S.C. § 3553(d)(3)(A)(ii) (providing that when agency receives notice of bid protest where "authorization for

---

[1] This factor – likelihood of success on the merits – is the most significant one in the injunctive relief calculus because "'Congress did not require any evaluation of injunctive relief factors as a prerequisite to a stay of contract performance upon the filing of a protest with the GAO.'" *Advanced Systems Development, Inc. v. United States*, -- Fed. Cl. --, 2006 WL 2130548, *13 (July 21, 2006) (quoting *Chapman Law Firm Co. v. United States*, 65 Fed. Cl. 422, 424 (2005), and holding that "the statute gives presumptive weight to the otherwise required showings of irreparable harm and public interest"). Indeed, should this Court ultimately reach the merits of Overlook's Complaint, the remaining injunctive relief prongs would be irrelevant because the CICA stay can be imposed via declaratory relief. *Id.* (quoting and following *Chapman Law Firm*, *supra*, and *CIGNA Government Services v. United States*, 70 Fed. Cl. 100, 114 (2006)).

contract performance to proceed was not withheld . . . , the contracting officer shall immediately direct the contractor to cease performance under the contract").

On or about August 22, 2006, Overlook learned that the Air Force, following its putative completion of corrective action, instructed LinQuest to "immediately proceed with contract performance[,]" effectively re-awarding the GPSOC contract to LinQuest. Despite the fact that Overlook promptly filed a GAO Supplemental Protest on August 24, 2006 – triggering the automatic CICA stay of contract performance – the Air Force has refused to comply with that stay, and has neither instructed LinQuest to cease contract performance, nor issued a so-called CICA stay override. *See Alion Science and Technology Corp. v. United States*, 69 Fed. Cl. 14, 16 (2005) ("Once a timely post-award bid protest is filed with the GAO, CICA imposes a statutory stay of contract performance pending the resolution of the protest."). The Air Force's refusal to comply with the automatic CICA stay is arbitrary, capricious, and violates law and regulation, including 31 U.S.C. § 3553.

The Air Force apparently believes that the stay is inapplicable in this case because Overlook's August 24, 2006 GAO Supplemental Protest was filed more than 10 days after the contract was *first* awarded in February 2006. The relevant award date, however – both for purposes of Overlook's latest GAO protest and CICA stay timeliness – is August 22, 2006, the date the Air Force ultimately "determined that award to LinQuest is proper." Indeed, at best, the Air Force's current refusal to comply with the CICA stay elevates form over substance and ignores that "[t]he automatic stay is intended to preserve the *status quo* during the pendency of the [GAO] protest so that an agency [can]not cavalierly disregard the GAO's recommendation to cancel the challenged

award." *Advanced Systems Development, Inc. v. United States*, -- Fed. Cl. --, 2006 WL 2130548, *6 (July 21, 2006); *see also PGBA, LLC v. United States*, 57 Fed. Cl. 655, 657-600 (discussing legislative history and purpose of CICA stay); *CIGNA Government Services v. United States*, 70 Fed. Cl. 100, 102 n.5 (2006) ("[A]bsent the stay, GAO's protest process – an enforcement mechanism for competition in government procurement – can be rendered illusory . . . .").

Moreover, had the Air Force decided to award the GPSOC contract at issue to Overlook as a result of the corrective action, LinQuest could have filed a GAO protest and, absent a legal agency override decision -- which is not present here -- would have been entitled to a CICA stay. Thus, according to the Air Force, whether a CICA stay is triggered by a timely-filed protest following corrective action turns on who is the beneficiary of the corrective action and who is the protestor. This is not – and, indeed, cannot be – the case. *See Keeton Corrections, Inc. v. United States*, 59 Fed. Cl. 753, 754 (2004) (noting that plaintiff, following corrective action and more than 10 days after the original award date, timely "filed a second [GAO] protest concerning the award which invoked the CICA automatic stay").

In the alternative, the CICA stay triggered by Overlook's original bid protest should be viewed as remaining in effect during the pendency of the Air Force's corrective action and effectively was continued by Overlook's timely filed August 24, 2006 GAO Supplemental Protest. The Air Force's current position is nothing more than an attempt "'to exploit'" an imagined "'loophole[] . . . so that, by the time the Comptroller General's recommendation came out, it would be too late and too costly to change contract awards, if such [is] the recommendation.'" *PGBA*, 57 Fed. Cl. at 660 n.8 (quoting *Lear Siegler,*

*Inc., Energy Prods. Div. v. Lehman*, 842 F.2d 1102, 1105 (9th Cir. 1988), *mod. On other grounds*, 893 F.2d 205 (9th Cir. 1989)).

In sum, the Air Force's "shortsighted approach is both arbitrary and capricious, and contrary to the objectives of CICA's stay provisions[,]" *Advanced Systems Development*, 2006 WL 2130548, at *8, and this Court should not countenance the Air Force's formalistic and cynical approach to statutory construction.

**B. Overlook Will Suffer Irreparable Harm Absent a Temporary Restraining Order or Preliminary Injunctive Relief**

This Court has recognized that "Congress enacted the automatic stay on the premise that the failure of an agency to stay performance could result in a competitive disadvantage that might not be remedied, causing a contractor to lose an important business opportunity." *PGBA*, 57 Fed. Cl. at 664 (citing *Lear Siegler, Inc.*, 842 F.2d at 1105). In this case, there is a distinct likelihood that, if a TRO or preliminary injunction is not granted, LinQuest will transition into the GPSOC to the point that Overlook will be unable to retain sufficient staff to continue to perform the contract should the GAO ultimately sustain the Supplemental Protest. *See* Affidavit of T. Roddy at ¶¶ 4-6 (hereinafter "Roddy Affidavit") (attached hereto as Exhibit A). Indeed, Overlook believes that LinQuest already has encouraged at least one Overlook employee to apply for a position with LinQuest. *Id.* at ¶ 5. Finally, if Overlook is not in a position to perform the GPSOC contract, Overlook will lose profits. *Id.* at ¶ 6.

It is axiomatic that, under these circumstances, Overlook will suffer an irreparable injury unless this Court grants Overlook's application for a temporary restraining order or its motion for a preliminary injunction. "A loss of potential profits 'stemming from a lost opportunity to compete'" is "'sufficient to constitute irreparable harm.'" *OTI America,*

*Inc. v. United States*, 68 Fed. Cl. 646, 659 (2005) (quoting Gentex Corp. v. United States, 58 Fed. Cl. 634, 654 (2003)); *see also United Payors & United Providers Health Srvs., Inc. v. United States*, 55 Fed. Cl. 323, 333 (2003) (finding irreparable injury where plaintiff "would not be able to recover lost profits associated with its loss of business"). In short, "[a]n award of bid preparation costs would not, by itself, be sufficient to redress the injury to" Overlook, should LinQuest be permitted to continue its transition. 68 Fed. Cl. at 659.

### C. The Balance of Harms and the Public Interest Decidedly Favors Overlook

The Air Force would suffer no harm if it were enjoined from allowing LinQuest to proceed with contract performance. Overlook successfully has been managing the GPSOC for seven years and is currently managing the GPSOC under the a bridge contract.

Finally, "[it] is well established that there is an overriding public interest in preserving the integrity of the federal procurement process by requiring government officials to follow procurement statutes and regulations." *CW Government Travel, Inc. v. United States*, 61 Fed. Cl. 559, 576 (2004); *see also PGBA*, 57 Fed. Cl. at 663 ("In the instant case, the public's interest . . . lies in preserving the integrity of the competitive process – such, indeed, clearly was Congress' view in providing that, except in circumstances not yet demonstrated here, the automatic stay should prevail.").

In this case, the public's interest favors requiring the Air Force to adhere to the CICA stay, particularly where the agency has not even issued an override decision. Moreover, the public has "a long-term interest in ensuring that the new contract represents the best overall value to the government." 57 Fed. Cl. at 663. As in *PGBA*,

"[g]iven the fact that there is no real indication that . . . [a] stay will impair services . . .[,] these long-term interests are paramount here and are best served by issuing the proposed injunction." *Id.; see also University Research*, 65 Fed. Cl. at 514 ("The costs and inconvenience associated with the delay in transition caused by the issuance of a preliminary injunction in this case are typical of the costs and inconveniences that face almost every new contractor seeking to unseat an incumbent contractor, and do not outweigh the imminent harm to plaintiff.").

## IV. CONCLUSION

As evidenced by the foregoing, Overlook meets all the requisites for a temporary restraining order and/or a preliminary injunction. Indeed, not granting Overlook's application and motion would cause far more harm to the integrity of the procurement process, to the taxpayer, and to Overlook, than allowing the status quo to remain undisturbed.

Dated: August 28, 2006

Respectfully submitted,

Ronald A. Schechter
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004
Tel: (202) 942-6105
Fax: (202) 942-5999

*COUNSEL OF RECORD FOR PLAINTIFF OVERLOOK SYSTEMS TECHNOLOGIES, INC.*

*Of Counsel:*
Drew A. Harker
Matthew H. Solomson
ARNOLD & PORTER LLP
Tel: (202) 942-6308
Fax: (202) 942-5999

# EXHIBIT A

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| OVERLOOK SYSTEMS TECHNOLOGIES, INC.,<br><br>*Plaintiff,*<br><br>*v.*<br><br>THE UNITED STATES OF AMERICA,<br><br>*Defendant.* | CASE NO. __________<br><br>JUDGE __________ |

**DECLARATION OF TIM RODDY**

I, Tim Roddy, under penalty of perjury, hereby depose and state as follows:

1. I am the Chief Financial Officer of Overlook Systems Technologies, Inc. My business address is 1950 Old Gallows Rd., Ste. 400, Vienna, VA 22182-3920. I have personal knowledge of all of facts stated herein.

2. As Chief Financial Officer, my responsibilities include ensuring the profitability of Overlook's contracts, as well as making sure that – from a business perspective – Overlook is in a position to adequately perform its various contractual obligations.

3. In particular, I also have financial oversight responsibilities related the business aspects of Overlook's GPSOC contract effort at Schriever AFB in Colorado.

4. If Overlook is forced to continue with efforts to transition performance of this contract to LinQuest, and LinQuest is allowed to begin contract performance, Overlook will have a difficult time retaining the necessary staff to perform the contract should the GAO ultimately sustain Overlook's protest.

5. In fact, it is my understanding that LinQuest already has approached at least one Overlook employee on two occasions to encourage that employee to complete a LinQuest employment application.

6. Overlook stands to suffer significant financial harm and experience a serious decline in employee morale if Overlook loses its current ability to successfully perform the GPSOC contract before the GAO has an opportunity to decide Overlook's Supplemental Protest.

I declare under the penalty of perjury that the foregoing is true and correct. Executed on this 28th day of August, 2006.

Timothy Roddy

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of Overlook's Complaint, Memorandum of Points and Authorities in Support of Application for Temporary Restraining Order and Motion for Preliminary Injunction, Application for Temporary Restraining Order, and Motion for Preliminary Injunction, to be served this 28th day of August, 2006, by facsimile, e-mail, and hand-delivery on the following:

Mr. Bryant Snee
U.S. DEPARTMENT OF JUSTICE
Civil Litigation Division
Commercial Litigation Branch
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-0315
Fax: (202) 514-8624
E-mail: bryant.snee@usdoj.gov

*Counsel for Defendant*

Ms. Jessica C. Abrahams
McKenna Long & Aldridge
1900 K Street NW
Washington, DC 20006-1108
Tel: (202) 496-7204
Fax: (202) 496-7756
E-mail: jabrahams@mckennalong.com

*Counsel for Awardee, LinQuest, Corp.*

Matthew H. Solomson